UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EUGENE J. LONG and YVETTE LONG,** | Civ. No. 17-5741 (KM-SCM) |
| **Plaintiffs,** | **OPINION & ORDER** |
| vs. | |
| **RUBEN M. BARRETT, ERICH C. HANS, ATHENA MATA, MARIA L. MATA, LOGISTIC OIL LTD, INC., JOHN DOES #1-5,** | |
| **Defendants.** | |

### KEVIN MCNULTY, U.S.D.J.:

Plaintiffs Eugene J. Long and Yvette Long sue defendants Ruben Barrett, Erich Hans, Athena Mata, Maria Mata, and Logistic Oil regarding a loan agreement. The Longs allegedly lent Athena Mata, Maria L. Mata, and Logistic Oil $25,000. Barrett, who receives monthly dividends from his tribe, allegedly pledged his monthly dividends as collateral for the loan. Erich Hans, the tribe's Director of Treasury, allegedly failed to process the assignment of Barrett's dividends for that purpose. The Longs have not been repaid and have not received any dividends by assignment from Barrett. The Complaint asserts claims of breach of contract, unjust enrichment, conversion, breach of fiduciary duty, breach of duty of care, fraud, civil conspiracy, and intentional infliction of emotional distress.

In a prior Opinion (ECF no. 27) and Order (ECF no. 28) I granted the motion of defendant Erich Hans, a tribal official, to dismiss the complaint on grounds of sovereign immunity. Now before the court is the plaintiffs' motion for a default judgment (ECF no. 32) as to the other defendants, who are not tribal officials and who have not appeared or answered the Complaint. As to

1

those other defendants, Ruben Barrett, Athena Mata, Maria L. Mata, and Logistic Oil Ltd, Inc., the clerk has entered default. For the reasons stated herein, the motion for a default judgment against those four defendants will be granted.

I. **THE COMPLAINT**

Plaintiffs Eugene J. Long and Yvette Long ("the Longs") of New Jersey sue defendants regarding a loan agreement. (Compl. ¶¶ 1 2). In around September 2012, defendant Maria L. Mata ("Maria," to distinguish her from Athena Mata) sought a loan from the Longs. (Compl. ¶ 19). Maria is a Florida resident and is the actual or beneficial owner of Logistic Oil, Ltd, Inc. ("Logistic Oil") (Compl. ¶¶ 9 10). Maria represented that she needed $25,000 for a short period of time to conduct a series of oil trading transactions expected to result in substantial profits. (Compl. ¶¶ 19 21). Maria stated that the loan would be secured by strong collateral. (Compl. ¶ 21). Athena Mata ("Athena"), the daughter of Maria, is President of Logistic Oil (and apparently a resident of the Polk County Jail in Bartow, Florida, at the time of service). Athena allegedly made the same representations. (Compl. ¶¶ 7 8, 25).

The Longs withdrew Yvette Long's entire IRA account to make the loan to Logistic Oil. (Compl. ¶¶ 23 26). The Longs had no other savings or liquid assets or income besides Social Security. (Compl. ¶ 26). They relied on the promises of Maria, Athena, and Logistic Oil that the money would be returned quickly and that collateral would secure the payment of the principal and dividend. (Compl. ¶¶ 25 26). The Longs needed the loan paid back quickly to avoid taxes and penalties for withdrawing from the IRA account. (Compl. ¶ 25). The Longs represented at the time that they "could not afford to take any risk" with this money. (Compl. ¶ 36).

Defendant Ruben Barrett ("Barrett"), currently a North Carolina resident, agreed to provide the collateral for the loan agreement. (Compl. ¶¶ 3, 28, 30). Barrett is an enrolled member of the Viejas Band of Kumeyaay Indians. (Compl.

2

¶ 4). The tribe disburses monthly dividend income to tribe members, including Barrett, from its casino revenues. (Compl. ¶ 32). Barrett stated that tribe members routinely assign their tribal dividend income as additional collateral for car loans, mortgages, and other credit purchases. (Compl. ¶ 34).

The loan agreement provided that Yvette Long would lend Logistic Oil $25,000. (Compl. ¶ 27). The essential terms of the agreement, documented in a promissory note and escrow agreement, provided the following: (a) full payment of the principal and dividend within 28 days; (b) a $10,000 dividend to Yvette Long; (c) a $10,000 increase in the dividend if the loan were not repaid within 28 days; (d) the loan funds and repayment would flow through the Escrow Agent's trust account; (e) the Escrow Agent would be compensated $5,000 from Logistic Oil; (f) the collateral would be provided by Barrett by the assignment of his monthly tribal income; (g) Barrett was the guarantor of the payments to Yvette Long and the Escrow Agent, Anthony Sposaro; (h) Barrett pledged and assigned $4,017.50 per month from his dividend income to be paid to the Escrow Agent and Yvette Long if the loan defaulted; (i) in case of default, the $5,000 Escrow Agent fee would reduce Yvette Long's return; and (j) in case of loan default, the Escrow Agent could arrange payment of Barrett's tribal dividend income with the Viejas's Directory of Treasury. (Compl. ¶¶ 28, 30). The loan agreement did not include a default interest rate. (Compl. ¶ 29). A separate agreement provided that Barrett would be compensated $10,000 for providing the collateral. (Compl. ¶ 31).

Defendant Erich Hans ("Hans"), a California resident, is or was the Director of Treasury for the Viejas Band of Kumeyaay Indians. (Compl. ¶¶ 5 6). Barrett and Hans allegedly prepared the assignment that was attached to the Escrow Agreement. (Compl. ¶ 35). Barrett produced a letter from Hans that reported Barrett's monthly tribal income in 2011 and 2012. (Compl. ¶ 38). Barrett also produced an email from Hans stating that Hans would give the Viejas Tribal Council notice of the assignment. (Compl. ¶ 39).

The Longs withdrew $25,000 from Yvette Long's IRA account and deposited it with the Escrow Agent. (Compl. ¶ 40). On October 3, 2012, the Escrow Agent was in possession of Yvette Long's funds, the signed promissory note, and the signed escrow agreement. (Compl. ¶ 41). Documentation of the assignment of the collateral was provided to Athena, Maria, and Logistic Oil. (Compl. ¶ 41).

Athena, Maria, and Logistic Oil did not repay the loan within 28 days as required by the promissory note. (Compl. ¶ 42). Yvette Long provided a formal notice of default to them in a letter dated February 5, 2013 and provided a copy of the letter to the Escrow Agent. (Compl. ¶ 43). The Escrow Agent then notified Hans of the circumstances and sent Hans instructions for forwarding Barrett's tribal dividend income. (Compl. ¶¶ 44 45). Hans did not respond to the Escrow Agent and Hans did not forward Barrett's tribal dividend income. (Compl. ¶ 46).

During this time period, Barrett told the Longs that the payments would be forthcoming soon. (Compl. ¶ 49). Barrett said that Hans had not responded because tribal elections were in process and no one could process the assignment until the new Director of Treasury was appointed. (Compl. ¶ 50). Barrett represented that the payments would be forthcoming by late March. (Compl. ¶¶ 49, 51).

When the Longs did not receive payments in March, Eugene Long called the Viejas Tribal Council. (Compl. ¶ 54). Hans made excuses, including a statement that "Mr. Barrett told me the matter had been settled." (Compl. ¶ 57). Hans later stated that he had never received a letter from Barrett authorizing voluntary garnishment. (Compl. ¶ 62). Eugene Long telephoned Barrett, who gave reasons why he would not pay, including that the guarantee had expired. (Compl. ¶¶ 64 65).

On April 10, 2013, Hans wrote an email to the Longs stating that "When I informed Mr. Barrett of the reported default, I asked him if I should initiate

the per capita garnishment as indicated in his voluntary garnishment letter. He (Barrett) stated that the reported default was erroneous, and that I was not to initiate the per capita garnishment." (Compl. ¶ 67).

The Longs and the Escrow Agent have not received payment. (Compl. ¶¶ 79 80). Since Yvette Long was not repaid in a timely fashion, she incurred a $10,000 fine from the IRS for withdrawing and not replacing funds in her IRA account. (Compl. ¶ 81). The Longs lost their home in foreclosure and have been unable to pay their bills. (Compl. ¶¶ 82, 85). The default and the accompanying problems have caused the Longs anxiety, depression, strife, and other problems. (Compl. ¶¶ 84, 86).

On August 3, 2017, Eugene and Yvette Long filed a complaint against Barrett, Hans, Logistic Oil, Athena Mata, Maria Mata, and John Does #1 5. (ECF No. 1). The complaint sets forth eight causes of action:

- ☐ Count One: Breach of Contract (Compl. ¶¶ 87 90)
- ☐ Count Two: Unjust Enrichment (Compl. ¶¶ 91 95)
- ☐ Count Three: Conversion (Compl. ¶¶ 96 97)
- ☐ Count Four: Breach of Fiduciary Duty (Compl. ¶¶ 98 106)
- ☐ Count Five: Breach of Duty of Care (Compl. ¶¶ 107 114)
- ☐ Count Six: Fraud (Compl. ¶¶ 115 129)
- ☐ Count Seven: Civil Conspiracy (Compl. ¶¶ 130 133)
- ☐ Count Eight: Intentional Infliction of Emotional Distress (Compl. ¶¶ 134 138).

Plaintiffs seek $45,000 due to Yvette Long; $5,000 due to the Escrow Agent; interest on the unpaid sums at the rate of 5% per year from November 1, 2012 onward; an order directing Barrett to complete and perfect the garnishment of his monthly tribal dividend until the debt is paid; punitive

5

damages of $100,000; costs and attorneys' fees; and any other relief the court deems necessary. (Compl. ¶¶ 90, 95, 97, 106, 114, 129, 133, 138).

On October 10, 2017, Hans filed a motion to dismiss for lack of personal jurisdiction, sovereign immunity, and for improper venue. (ECF No. 14). granted that motion based on his sovereign immunity as a tribal official. (ECF no. 27) In that Opinion, I stated explicitly that my ruling applied only to Hans, and not to the remaining defendants, Athena Mata, Maria Mata, Ruben Barrett, and Logistic Oil, who are not tribal officials and who in any event had not appeared in the case.

## II. DISCUSSION

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Fed. Prac. & P. Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default

judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at *2.

## A. Prerequisites for Entry of Default Judgment

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within 21-day time period provided by Fed. R. Civ. P. 12(a). *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985).

Filed affidavits and returns of summonses document the following: Defendant Barrett was served by leaving a copy with a responsible adult at his North Carolina home on August 12, 2017. (ECF no. 4) Defendant Athena Mata was served personally, and defendant Logistic Oil Ltd, Inc. was served *via* service on its President, Athena Mata, at the Polk County Jail in Bartow, Florida, on August 22, 2017. (ECF nos. 11, 12) Defendant Maria L. Mata was served by regular and certified mail and by leaving a copy at her last known address, after diligent attempts to serve her personally, on November 27 and 28, 2017, and she has acknowledged actual receipt of a copy by email. (ECF no. 22) These methods of service are effective pursuant to Fed. R. Civ. P. 4(e)(1) & (2), N.J. Ct. R. 4:4-4(a)(1), (5) & (6), and N.J. Ct. R. 4:4-4(b)(1)(A) & (C), and N.J. Ct. R. 4:4-4(c).

Defendants Barrett, Athena Mata, Maria Mata, and Logistic Oil have failed to answer or otherwise move in response to the Complaint, timely or otherwise.

The clerk entered default against defendant Barrett on September 21, 2017 (Clerk's Docket Entry following items 6&7); against defendants Athena Mata and Logistic Oil on October 12, 2017 (Clerk's Docket Entry following items 16 & 17); and against defendant Maria L. Mata on December 27, 2017 (Clerk's Docket Entry following item 24).

On May 10, 2017, the United States filed its motion for default judgment against Mr. Thompson. (ECF no. 17) There has been no response to the motion.

7

Accordingly, I am satisfied that the prerequisites to filing a default judgment are met. *See Gold Kist*, 756 F.2d at 18–19.

### B. Three Factor Analysis

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). Those factors, considered in light of the record of this case, weigh in favor of entry of a default judgment.

The evaluation of the first factor is always complicated by the defendant's failure to answer or to oppose the motion. My independent review of the case file, however, does not suggest that the claims are legally flawed or that defendant could mount a meritorious defense. *See Doe*, 2013 WL 3772532, at *5. Accepting the allegations in the Complaint as true, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990), I find that the plaintiff has successfully stated a claim for relief as against the defendant.

The claim is not a complex one. The Longs lent the principal sum of $25,000 to Logistic Oil, an entity owned or controlled by Maria and Athena, based on a promissory note and written escrow and security agreements. (*See* ECF no. 32-2, Exhibits.) Maria and Athena represented, personally and on behalf of Logistic, that this was a short-term loan and that the proceeds would be returned in time for the Longs to avoid substantial IRA early-withdrawal penalties. Barrett agreed in writing to stand as guarantor and pledge his tribal earnings as security. The loan terms are frankly so unrealistic as to suggest fraud: repayment of the $25,000, plus a bonus of $10,000, within 28 days, with an additional $10,000 if repayment was late, plus a $5,000 bonus to Barrett for providing security. The loan was supposedly to be used to pursue a lucrative oil and gas opportunity, but if that were true, it should not have been necessary to obtain funding from a private party's IRA at an interest rate of

8

40% for one month. Logistic Oil is alleged to be a sham entity.

The money was not repaid, and Barrett did not pledge the required security. Facts are pled to suggest that the parties immediately and in bad faith avoided their obligations and did not intend to honor them. Causes of action include breach of contract, fiduciary breach, fraud, and conversion. No obvious defects or defenses suggest themselves. Although I granted the motion to dismiss of Hans, that dismissal was based on sovereign immunity, a basis which would not apply to any other defendant.

The second and third factors also weigh in favor of default. Defendants were properly served, but failed to appear or defend in any manner. There is suggestive evidence that Maria, for her part, attempted to evade service. It is clear that Plaintiff has been prejudiced by this dereliction because it has been "prevented from prosecuting [its] case, engaging in discovery, and seeking relief in the normal fashion." *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (find that a defendant's failure to answer prejudices the plaintiff); *see also Gowan v. Cont'l Airlines, Inc.*, 2012 WL 2838924, at *2 (D.N.J. Jul. 9, 2012) ("[Plaintiffs] will suffer prejudice if the Court does not enter default judgment as Plaintiff[s] [have] no other means of seeking damages for the harm caused by Defendant."). Absent any evidence to the contrary, "the Defendant's failure to answer evinces the Defendant's culpability in [the] default. *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023 at *4. In this case, "there is nothing before the Court to show that the Defendant[s'] failure to file an answer was not willfully negligent." *Id.* (citing *Prudential Ins. Co. of America v. Taylor*, 2009 WL 536043, at *1 (D.N.J. Feb. 27, 2009) (finding that when there is no evidence that the defendant's failure to answer the complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted).

Overall, then, the three factors support the entry of default judgment. I will grant the motion for default judgment.

### C. Remedies

The damages sought are straightforward. Compensatory damages consist of the $25,000 principal plus the two $10,000 bonuses provided for in the parties' agreement, for a total of $45,000.

The Longs also seek punitive damages in the amount of $50,000 apiece, based on the tort theories pled in the complaint. I see sufficient indicia of bad faith and fraud, and I am also cognizant that the Longs allege that the loan proceeds represented their entire retirement savings, as defendants were aware. I will award the punitive damages, but only as to Mrs. Long, the party who actually made the loan, albeit at the urging of her husband.

### ORDER

IT IS THEREFORE, this 6th day of September, 2018,

ORDERED that the motion for default judgment (ECF no. 32) is granted. A separate judgment will be entered in substantially the form submitted by plaintiff. The clerk shall close the file.

_____
KEVIN MCNULTY, U.S.D.J.